UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21mc21260

In Re Application of

DANTE LOCATELLI pursuant to
28 U.S.C. § 1782 For Judicial Assistance In
Obtaining Evidence From CAETANO ROSA
HOLDING, CORP., BHW ALPHA LLC,
BHW OMEGA LLC, and PRYOR LOCATELLI
CONSULTING SERVICES LLC, For Use in
Foreign and International Proceeding
_____/

### *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN AND INTERNATIONAL PROCEEDING PURSUANT TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW

Applicant, Dante Locatelli ("**Dante**"), respectfully submits this application to obtain discovery pursuant to 28 U.S.C. § 1782 and Rules 26 and 45 of the Federal Rules of Civil Procedure (the "**Application**") from CAETANO ROSA HOLDING, CORP. ("**Caetano Rosa**"), BHW ALPHA LLC ("**BHW Alpha**"), BHW OMEGA LLC ("**BHW Omega**"), and PRYOR LOCATELLI CONSULTING SERVICES LLC ("**Pryor Florida**") (collectively, the "**Discovery Subjects**"). In support of this Application, Dante states as follows:

**I.      INTRODUCTION**

With this Application, Dante seeks discovery from the Discovery Subjects to show that his sister, Cristiane Locatelli ("**Cristiane**"), committed various financial improprieties in a covert scheme to takeover certain family assets/businesses. The requested discovery is intended to be used in a pending lawsuit in Brazil, and may further support a separate action in the Marshall Islands, which Dante intends to commence forthwith.

The facts relevant to this Application are set forth below and in the Declaration of Andre

Vasconcelos Roque in Support of *Ex Parte* Application for Judicial Assistance in Obtaining Evidence For Use in a Foreign and International Proceeding Pursuant to 28 U.S.C. § 1782 (the "**Declaration**"), attached hereto as **Exhibit A**. The facts stated in the Declaration are incorporated herein by reference.

A.  **Factual Background**

1.  Dante is the Claimant in a lawsuit pending in Brazil, in the City of São Paulo's 1st Lower Corporate Court (process n. 1075002-52.2020.8.26.0100) (the "**Brazil Lawsuit**") against Cristiane Locatelli ("**Cristiane**") and Caetano Rosa. The Brazil Lawsuit arises out of a dispute between Dante and Cristiane regarding, among other things, the operations and/or management of Caetano Rosa, a company incorporated in the Republic of the Marshall Islands, with its headquarters and/or operations based in Miami-Dade, Florida.

2.  Prior to the filing of the Brazil Lawsuit, Caetano Rosa had four main assets: (i) BHW Alpha, (ii) BHW Omega, (iii) Pryor Florida (collectively, the "**Florida LLCs**"), and (iv) Pryor Locatelli Consultores Ltda. ("**Pryor Brazil**"). The Florida LLCs own real estate properties in Florida. It is unclear if Pryor Florida has assets. Pryor Brazil was a profitable company in Brazil and the main cash generating company/source for the Locatelli family.

3.  The late Jobelino Locatelli ("**Jobelino**"), father of Dante and Cristiane, created Caetano Rosa in September 2018.[1] The entirety of Caetano Rosa's shares were issued to Jobelino, who was also the company president. As the sole shareholder and director of Caetano Rosa, subsequent to the incorporation of Caetano Rosa, Jobelino signed the minutes of a shareholders' meeting dated September 24, 2018 (the "**Resolutions**") pursuant to which he resolved that the

---

[1] Throughout his life, Jobelino founded several accounting, business process services, and legal representation firms, the most successful of which was Pryor Brazil, incorporated in São Paulo, Brazil, which offered legal representation services to foreign companies.

entirety of the 500 authorized and issued shares of Caetano Rosa held in his sole name ("**Jobelino's Caetano Rosa Shares**") would be allocated in equal parts to Dante, Cristiane, Douglas Locatelli ("**Douglas**"), and Dalton Locatelli ("**Dalton**") in the case of his incapacitation or upon his death. Later, in March 2019, Jobelino appointed his daughter Cristiane, as Caetano Rosa's vice-president. In February 2020, Jobelino transferred all his shares in Pryor Brazil representing 99.976% of the capital stock of Pryor Brazil to Caetano Rosa. Thus, Caetano Rosa became the controlling shareholder of Pryor Brazil with full power and control over that entity. Cristiane still owned the remaining 0.024% of Pryor Brazil, as Brazilian laws required until 2019 a minimum of two shareholders in a limited liability company incorporated under Brazilian laws.

4. Upon Jobelino's passing on February 17, 2020, Cristiane became the sole director of Caetano Rosa.

5. As Caetano Rosa's vice-president (but not shareholder), Cristiane was required to comply with the shareholders' determination contained in the Resolutions and allocate Jobelino's Caetano Rosa Shares to each of her siblings, including Dante, after Jobelino's death. However, Cristiane ignored, and continues to ignore, the shareholders' determination in the Resolutions to allocate Jobelino's Caetano Rosa Shares among herself and her siblings and continues to manage Caetano Rosa to her own benefit. Cristiane has also failed to call and hold an annual meeting of shareholders of Caetano Rosa for the election of directors in accordance with section 64 of the Marshall Islands Business Corporations Act 1990 ("**BCA**").

6. On March 23, 2020, after Jobelino's passing, Jobelino's four children convened a board meeting and the attendance list of that meeting is referred to as "Board Members and Shareholders" in attendance. During this meeting, the siblings discussed various businesses and agreed upon as follows with respect to Caetano Rosa and Pryor Brazil: Cristiane, Dalton, and

Douglas would hold management positions at Caetano Rosa, with equal powers, while Dante would assume the secretary position. The four siblings further agreed that the budget for the companies of the group would require approval of all four siblings and variations exceeding BRL 10 thousand would also be submitted to the prior approval of the siblings. In addition, the siblings agreed that transactions involving the offshore bank accounts would have to be approved by them.

7. While Caetano Rosa's shareholding composition was supposed to be rectified, Dante steadily received continued dividends that flowed from Pryor Brazil in March, April, and May 2020.

8. In June 2020, however, Cristiane suddenly and unilaterally suspended the payment of dividends to Dante, taking away his main source of income, as Cristiane still had not ratified and/or regularized Caetano Rosa's shareholding composition.

9. During successive meetings held between the siblings, Cristiane advised that the payment of dividends by Caetano Rosa had been suspended to all the siblings until the issues regarding Caetano Rosa's restructuring were resolved.

10. As later discovered, this was not true. By way of example, in June 2020, Cristiane and Dalton received a significant sum of monies (BRL 120 thousand to Dalton and BRL 144 thousand to Cristiane) under the guise of dividends and management fees.

11. Dante also discovered that Cristiane, as the provisional administrator of Caetano Rosa, initiated a corporate maneuver in Brazil to divert Pryor Brazil (the main revenue-generating asset for Caetano Rosa) from Caetano Rosa and placing Pryor Brazil under her sole control, seemingly incorporating it into her estate without sharing with the other siblings as had been agreed upon.

12. Indeed, Cristiane, taking undue advantage of her position as the sole director of

Caetano Rosa, and in a veiled attempt to seize control of Pryor Brazil, surrendered all the shares that Caetano Rosa had in Pryor Brazil back to Pryor Brazil, where Cristiane was a minority shareholder, without any shareholder approval from Caetano Rosa and likely without an independent appraisal of Pryor Brazil. With that maneuver, Cristiane effectively became the sole shareholder of Pryor Brazil depriving Caetano Rosa and the Locatelli family from the most important company of its group.

13. Specifically, as reflected by Pryor Brazil's registries (and unbeknownst to Dante), Cristiane made two new amendments to the Articles of Association – the 19th amendment, filed on July 2, 2020, and the 20th amendment, filed on August 5, 2020. Cristiane made these amendments by signing solely as the manager of both Pryor Brazil and Caetano Rosa. The 19th amendment expanded Cristiane's powers as manager (allowing her to unilaterally authorize acts of any shape, form or value), while the 20th amendment altered the shareholders registry. Specifically, through the 20th amendment, Caetano Rosa transferred the entirety of Pryor Brazil's shares to Pryor Brazil itself. Pryor Brazil then kept those shares "in treasury": under Brazilian law (article 30, paragraph 4, Brazilian Corporations Law – "*Lei das S.A.*"), such shares are considered out of circulation as long as kept "in treasury," and only the remaining shareholders may vote and receive dividends.

14. And so, as the sole remaining shareholder, in spite of owning less than 0.024% of Pryor Brazil's total issued shares, Cristiane in effect became a 100% shareholder of Pryor Brazil, effectively controlling its cash and underlying entities. This transaction likely violated Brazilian laws because a Brazilian company may only buy the shares issued by itself using retained profits or non-mandatory cash reserves, and compliance with this legal condition was never clarified by Cristiane or the current management of these companies.

**B.       The Brazil Lawsuit And Intended Marshall Islands Proceeding**

15.     In light of Cristiane's aforesaid financial improprieties, on August 19, 2020, Dante filed the Brazil Lawsuit against Cristiane and Caetano Rosa to prevent Cristiane from improperly taking advantage of her position as Caetano Rosa's temporary administrator.

16.     Specifically, the Brazil Lawsuit seeks, among other things, an injunction order to compel Cristiane to promptly recognize the transfer of Jobelino's Caetano Rosa Shares pursuant to the shareholder's determination in the Resolutions to Jobelino's children (including Dante) and providing the necessary filings to the company's registries.  The Brazil Lawsuit also seeks to suspend Cristiane's unilateral distributions to herself, as well as suspend/annul Pryor Brazil's 19th and 20th amendments and to cease the distribution of dividends pending resolution.  A true and correct copy of Dante's complaint in the Brazil Lawsuit, as translated from Portuguese to English, is attached to the Declaration as Exhibit 1.

17.     In defense to the Brazil Lawsuit, and in an effort to justify her scheme to consolidate Pryor Brazil's wealth in herself, Cristiane has claimed that she sold Caetano Rosa's shares in Pryor Brazil because Caetano Rosa required cash from Pryor Brazil to pay off some of the Florida LLCs' purported loans.  *See* Cristiane's response to Dante's complaint at ¶¶ 32-35, as translated from Portuguese to English, as attached to the Declaration as Exhibit 2.

18.     Although the Lower Court dismissed the Brazil Lawsuit without prejudice on jurisdictional grounds, the matter is currently on appeal in the São Paulo State Upper Court ("*Tribunal de Justiça do Estado de São Paulo*").[2]

---

[2] With her response, Cristiane has represented that jurisdiction is instead appropriate in the Marshall Islands. *See, e.g.*, Exhibit 2 at ¶¶ 51, 59, and 63 (admitting jurisdiction in Marshall Islands as Caetano Rosa's location of incorporation).  As such, notwithstanding the Brazil Lawsuit, Dante intends to prosecute a separate action in the Marshall Islands.

19. The appeal challenges the Lower Court's sentence on multiple legal grounds, including:

(a) the scope of Brazilian jurisdiction under articles 21 and 22 of the Brazilian Civil Procedure Code and under article 12 of the Law of Introduction to the rules of Brazilian Law (Brazilian Federal Decree-Law n. 4.657/1942);

(b) the sibling's actions and conduct as partners in a *de facto* corporate relationship that oversaw Caetano Rosa and Pryor Brazil; and

(c) Dante's lack of opportunity to file a response to Cristiane's defenses, as provided under articles 350 and 351 of the Brazilian Civil Procedure Code.

20. Under Brazilian Civil Procedure Code, article 1.013, the Tribunal (Upper Court) may review all law and fact matters that were challenged in the appeal. In addition, according to article 1.012 of the Brazilian Civil Procedure Code, the effects of the Lower Court´s ruling are suspended until the judgment of the appeal.

21. Furthermore, the Tribunal may affirm, reverse or vacate rulings of the Lower Court. If the Tribunal reverses the ruling, it may either (a) immediately judge the case's merits, pursuant to article 1.013, paragraph 3 of the Brazilian Civil Procedure Code; or (b) return the case to the Lower Court so that it may proceed with the lawsuit to adjudication. If the Tribunal vacates the ruling, however, the lawsuit will be returned to the Lower Court for a new judgment concerning Brazilian Courts' jurisdiction over the case, reviewing matters of both fact and law.

22. In addition to the foregoing, because the Lower Court dismissed the Brazil Lawsuit without prejudice, Dante may refile the lawsuit on condition of demonstrating the removal of the impediments upheld at the previous judgment (article 486, Brazilian Civil Procedure Code).

23. If the Tribunal immediately determines the case merits, reversing the Lower Court's

ruling to dismiss the Brazil Lawsuit, Dante could also file a "rescission proceeding" ("*ação rescisória*") under articles 966 through 975, Brazilian Civil Procedure Code. Importantly, access to new evidence is a legal basis for filing such a proceeding under article 966, item 6, Brazilian Civil Procedure Code.

24. In any event, and regardless of which procedural avenue and/or action Dante pursues in support of his claims against Cristiane, Dante currently lacks access to the documents needed to support his claims. And so, to support the Brazil Lawsuit and/or a separate proceeding in the Marshall Islands (as Cristiane's misconduct and various breaches of the BCA give rise to a lawsuit there), Dante must now seek discovery from the Discovery Subjects, as discussed below.

C. **Discovery Sought**

25. The Discovery Subjects have knowledge and are in the possession, custody, or control of documentation that is likely to lead to the discovery of admissible evidence in the Brazil Lawsuit and/or a separate proceeding in the Marshall Islands.

26. Specifically, Caetano Rosa may have documentation regarding any and all appraisals of Pryor Brazil prior to Cristiane's self-serving transfer of Pryor Brazil's shares. Caetano Rosa may also have documentation regarding Cristiane's unilateral distributions from Caetano Rosa and/or Pryor Brazil to herself, and such other records evidencing Cristiane's scheme to divert funds from Dante. Dante would additionally require Caetano Rosa's bylaws to verify Cristiane's powers and duties as an officer, and any such other shareholder meeting minutes that may evidence Cristiane's mishandling of the Florida LLCs.

27. As for the Florida LLCs, Cristiane has implicated them in her defense to the Brazil Lawsuit. Specifically, in the Brazil Lawsuit, Cristiane attempted to justify her scheme to consolidate Pryor Brazil's wealth in herself by claiming that she needed cash from Pryor Brazil to

pay off some of the Florida LLCs' purported loans. Cristiane alleged in the Brazil Lawsuit that the rental payments of tenants of the Florida LLCs became insufficient to serve the debt of those loans. If the Florida LLCs have documentation relating to such purported loans and the debts Cristiane allegedly paid off, Dante is entitled to same. Notably, in the Brazil Lawsuit, Cristiane filed two copies of bank statements indicating that the Florida LLCs were making regular monthly payments, without default. *See* Exhibit 3 attached to the Declaration. If the Florida LLCs' alleged debt could not be paid off by the rent received by the Florida LLCs, Dante is entitled to seek documentation evidencing same. Relatedly, Dante is also entitled to such documentation evidencing any acceleration clauses that would be applicable.

28. If Cristiane is mishandling other assets owned by Caetano Rosa and/or its subsidiaries, Dante may seek additional judicial relief in Brazil (without prejudice to seeking relief abroad), as Cristiane has residence in Brazil and, therefore, is subject to Brazilian jurisdiction per article 21, item I, of the Brazilian Civil Procedure Code.

29. Further, if Caetano Rosa's bylaws dictate specific duties for Cristiane or otherwise impose limits on her powers, Cristiane's conduct also gives rise to a potential administrative request or lawsuit to declare the filing of Pryor Brazil's amendments before the State Commercial Registry legally void, in accordance with articles 1.150, 1.153, 1.154, 1.174 of the Brazilian Civil Code and with articles 35, and 40 through 51 of Brazilian Federal Law n. 8.934/1994.

30. Similarly, given Cristiane's various financial improprieties, Dante is also evaluating filing criminal complaints against Cristiane in Brazilian courts, for which additional evidence is necessary, some of which may only be obtained by the discovery sought in the Application.

31. Indeed, to support any of the contemplated actions and/or proceedings discussed above, Dante requires discovery from the Discovery Subjects, all of whom are located in Miami-

Dade County, Florida, as set forth in the Application. Even though Caetano Rosa is incorporated in the Republic of the Marshall Islands, Caetano Rosa retained the services of Florida attorneys and accountants (such as Miami Best Accountants, Inc. and Kravitz Law, P.A.), maintains its operating address at 905 Brickell Bay Dr., Suite 2cl-23, Miami, Florida 33131 (*see* Exhibit 4 attached to Declaration), held relevant assets in Florida (Cristiane has filed documentary evidence in the Brazil Lawsuit revealing the existence of at least one bank account held by Caetano Rosa with Sunstate Bank in Miami-Dade County, Florida; *see* Exhibit 5 attached to the Declaration), notarized various corporate documents in Florida (including, but not limited to, the extraordinary meeting of the board of shareholders, the minutes of an extraordinary meeting of board of shareholders, etc.). And, although Caetano Rosa is a named party to the Brazil Lawsuit, Dante has been unable to obtain the requested discovery in such proceeding because Caetano Rosa is incorporated outside of Brazil, and its documents may also be located outside of Brazil, which could potentially diminish the effectiveness of Brazilian discovery.

32. For the reasons stated above, the requested documents are essential to the Brazil Lawsuit in its current stage, as the record has not been fully developed yet, and such discovery could potentially provide basis for additional relief in Brazil and abroad.

33. This Application is filed *ex parte* seeking leave to serve the subpoenas attached hereto as **Exhibits B (Caetano Rosa)**, **C (Pryor Florida)**, **D (BHW Alpha)**, and **E (BHW Omega)**. *See In re Clerici*, 481 F.3d 1324, 1329-30 (11th Cir. 2007) (*ex parte* order granted one day after Section 1782 application filed); *see also In re Application of Mesa Group, LLC*, 878 F. Supp. 2d 1296 (S.D. Fla. 2012). The Discovery Subjects will have the opportunity to respond or otherwise raise any permissible objection to the subpoenas after service is completed.

34. A proposed order is attached to this Application.

II. **MEMORANDUM OF LAW**

   A. **THE APPLICATION SATISFIES 28 U.S.C. § 1782.**

   35. Dante requires this Court's assistance to obtain discovery from the Discovery Subjects for use in a foreign proceeding as provided in Section 1782.

   36. 28 U.S.C. § 1782 provides, in pertinent part:

   > The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal including criminal investigations conducted before normal accusation.

   37. The Eleventh Circuit has made it clear that to seek discovery pursuant to Section 1782, the request "(1) must be made by a foreign or international tribunal, or by any interested person; (2) the request must seek evidence, whether it be the testimony or statement of a person or the production of a document or other thing; (3) the evidence must be for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47.

   38. This Application meets each of these requirements as shown below.

   39. First, Dante is an "interested person" within the meaning of Section 1782, as he is the Claimant in the Brazil Lawsuit. *See Intel* 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."). Dante is also an "interested person" insofar as he seeks discovery from the Discovery Subjects in connection with a separate proceeding in the Marshall Islands. Indeed, Section 1782 does not require that an action has been filed or is pending before the foreign or international tribunal. *See Intel Corp.*, 542 U.S. at 223; *Application of Consorcio Ecuatoriano de*

*Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1267 (11th Cir. 2014) ("The court observed that, as interpreted by the Supreme Court, section 1782 does not require that the foreign proceeding be pending or imminent, but rather only that the proceeding 'be within reasonable contemplation.'") (citing *Intel Corp.*, 542 U.S. at 259). Because Dante intends to pursue claims against Cristiane in the Marshall Islands, and may require discovery from the Discovery Subjects before doing so, such proceeding is within "reasonable contemplation" under Section 1782.

40. Second, this Application requests documentary evidence from the Discovery Subjects. Specifically, as the subpoenas filed herewith reflect, Dante is requesting the Discovery Subjects to produce a series of documents that are material to the allegations, claims, and/or defenses at issue in the Brazil Lawsuit.

41. Third, the Discovery Subjects are all located in this District. Specifically, the Florida LLCs are Florida limited liability companies, with registered agents/offices in the District. *See* Sunbiz.org printout attached hereto as **Exhibit F**. Although Caetano Rosa was incorporated in the Republic of the Marshall Islands, it is located in this District for purposes of Section 1782. Indeed, Caetano Rosa (a) maintains its operating address at 905 Brickell Bay Dr., Suite 2cl-23, Miami, Florida 33131;[3] (b) maintains a bank account in Miami;[4] and (c) conducts business and/or shareholder meetings in Miami.[5] Further, the maintenance of any corporate actions (such as the instructions for incorporation, corporate filings for amendments to the Articles of Incorporation and Bylaws, dissolution filings, and requests for the issuance of certificate of incumbency, etc.)

---

[3] *See* Exhibit 4 attached to Declaration.

[4] *See* Exhibit 5 attached to Declaration.

[5] *See, e.g.*, Declaration at ¶¶ 6, 11 35.

for Caetano Rosa would be handled by the local office of International Registries Inc. ("**IRI**") based in 401 SE 12th Street, Ft. Lauderdale, Florida (*see* website print out attached hereto as **Exhibit G**) from which the local representatives of the registered agent (The Trust Company of the Marshall Islands, Inc.) operates from. Caetano Rosa is thus subject to this Court's jurisdiction.

42. Fourth, the requested discovery seeks the production of documents for use in the Brazil Lawsuit and/or a separate proceeding in the Marshall Islands. In the Brazil Lawsuit, Dante intends to show that Cristiane's supposed justification for the sale of Pryor Brazil's shares are unsubstantiated, and obtain from the courts the suspension of the effects of that sale. Dante may also file a claim for losses and damages suffered against Cristiane as a result of her conflict of interest and mismanagement of Caetano Rosa and the related entities, including the Florida LLCs. Dante also intends to obtain Caetano Rosa's bylaws to evidence Cristiane's lack of powers to effectuate the sale of Pryor Brazil's shares. The discovery provided will also be used in the contemplated Marshall Islands proceeding.

    **B.**  **The *Intel* Factors Weigh In Favor of Granting the Application.**

43. The facts here weigh in favor of allowing discovery for use in the Brazil Lawsuit and/or in a proceeding in the Marshall Islands.

44. The Supreme Court has identified four discretionary factors that a district court must consider when ruling on a §1782 application: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether the request is otherwise "unduly intrusive

or burdensome." *Intel*, 542 U.S. at 264-65. Here, all four factors weigh in favor of granting the Application.

45. First, with the exception of Caetano Rosa, none of the Discovery Subjects are named parties in the Brazil Lawsuit. *See Intel*, 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need from §1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matters arising abroad."). Documents in the possession, custody or control of the Discovery Subjects are directly relevant to the Brazil Lawsuit and/or a separate proceeding in the Marshall Islands. Therefore, Section 1782 is necessary and appropriate to obtain the requested discovery. And, although Caetano Rosa is a named party to the Brazil Lawsuit, Dante has been unable to obtain the requested discovery in such proceeding because Caetano Rosa is incorporated outside of Brazil. Its documents may also be located outside of Brazil, which could potentially diminish the effectiveness of Brazilian discovery. In any event, because Dante seeks to prosecute his claims against Cristiane in the Marshall Islands as well, discovery from Caetano Rosa pursuant to Section 1782 is proper.

46. Second, there is no indication, or reason to suggest, that any Brazilian court considering the Brazil Lawsuit would be unreceptive to judicial assistance through Section 1782 discovery. There is no rule or law applicable to the Brazil Lawsuit containing any provision or rule prohibiting the filing of this Application or the requested discovery. Indeed, under Brazilian law, the parties to a judicial proceeding are entitled to submit any kind of evidence to the court, as long as that evidence has not been improperly obtained. *See* Decl. at ¶ 37; *see also In re Atvos Agroindustrial Investimentos S.A.*, 120MC00211GBDSDA, 2020 WL 4937084, at *8 (S.D.N.Y. Aug. 24, 2020) (Brazilian government was receptive towards United States federal-court judicial

assistance, and thus factor considering government receptivity weighed towards granting application for domestic discovery for use in Brazil, as under Brazilian law, the parties to a judicial proceeding were entitled to submit any kind of evidence to the court, as long as that evidence was not improperly obtained). The same is true for the contemplated proceeding in the Marshall Islands—there is no suggestion that a Marshall Islands tribunal would reject evidence obtained through this Application. *See In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (courts look for "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782.") (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *see also In re MTS Bank*, 17-21545-MC, 2018 WL 3145806, at *6 (S.D. Fla. June 27, 2018) (courts should err on the side of ordering discovery under § 1782); *In re Application of N. Am. Potash, Inc.*, 12-20637-CV, 2012 WL 12877816, at *8 (S.D. Fla. Nov. 19, 2012), *report and recommendation adopted*, 12-20637, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013) ("courts should err on the side on ordering discovery, since foreign courts can easily disregard any material that they do not wish to consider . . . the foreign court can easily protect itself from the effects of any discovery order by a district court that inadvertently offends its practice.").

47. Third, this Application is not filed for any improper purpose or to circumvent any foreign proof-gathering restrictions or other policies of a foreign country or the United States. *See Intel*, 542 U.S. at 58.

48. Finally, this Application is not unduly burdensome or intrusive. It seeks a specific category of discovery in the possession, custody or control of the Discovery Subjects. Even so, upon service of the subpoenas, the Discovery Subjects may raise any claims or rights under Federal Rule of Civil Procedure 45, as applicable. *See, e.g.*, *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that applications for subpoenas

pursuant to Section 1782 may be filed *ex parte* because "[t]he witness can . . . raise [] objections and exercise [] their due process rights by motions to quash the subpoenas.").

49. Accordingly, for the reasons set forth above, this Application should be granted.

### III. CONCLUSION

**WHEREFORE**, Dante respectfully moves the Court to issue the attached order granting the Application, authorizing the issuance of the subpoenas in the form attached hereto as **Exhibits B – E**.

April 2, 2021

Respectfully submitted,

/s/ Luis A. Perez
Luis A. Perez
Florida Bar No. 514004
AKERMAN LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 1100
Miami, Florida 33131
Phone: (305) 374-5600
Fax: (305) 374-5095
luis.perez@akerman.com
giselle.cordoves@akerman.com

and

Kenway Wong
Florida Bar No. 125323
AKERMAN LLP
Post Office Box 231
Orlando, FL 32802-0231
Phone: (407) 423-4000
Fax: (407) 843-6610
kenway.wong@akerman.com
karilynn.alhasnawi@akerman.com

*Counsel for Applicant Dante Locatelli*